# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-0870V**

| | |
|---|---|
| LISA ALBER,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: April 20, 2026 |

*Leigh Finfer, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Alyssa M. Petroff, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On May 22, 2025, Lisa Alber filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 3, 2023. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Respondent has filed a Rule 4(c) Report arguing this case is not appropriate for compensation, because Petitioner has not satisfied the statutory "severity requirement."

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

(ECF No. 12 at *6-8). For the reasons set forth below, I find that Petitioner likely suffered the residual effects of her condition for more than six months.

## I. Relevant Evidence

### A. Medical Records

Petitioner received a flu vaccine in her left deltoid on October 3, 2023. Ex. 1 at 1. Less than a month later (November 1, 2023), she saw her primary care provider ("PCP") for left shoulder pain. Ex. 3 at 75. Petitioner explained that she had received her annual flu vaccine a month earlier, and felt no immediate discomfort. *Id*. However, the next day her left shoulder was painful and stiff. *Id*. Since then, she had experienced gradually worsening pain in her left deltoid area. *Id*. She had taken Tylenol without relief, and was unable to take non-steroidal anti-inflammatory medications due to prior side effects. *Id*. On examination, her left shoulder exhibited soft tissue swelling, tenderness over the left deltoid, and limited range of motion ("ROM") in extension due to pain. *Id*. at 76. Petitioner was diagnosed with SIRVA, and an MRI and physical therapy ("PT") were recommended. *Id*. at 77.

Two weeks later (November 15, 2023), Petitioner returned to her PCP. Ex. 3 at 92. She again reported left shoulder pain following vaccination, with difficulty moving her shoulder at times. *Id*. An MRI revealed mild subacromial subdeltoid bursitis, mild osteoarthritis, and intact left rotator cuff tendons. Ex. 3 at 275.

On December 1, 2023, Petitioner underwent a PT evaluation of her left shoulder. Ex. 4 at 16-17. She reported gradually worsening pain that began the day after vaccination. *Id*. She rated her pain as two out of ten at present, ranging from two to six out of ten. *Id*. at 18. On examination, her left shoulder ROM displayed deficits compared to the right shoulder in flexion, abduction, internal rotation, and external rotation. *Id*. at 19.

Petitioner attended PT again on December 14, 2023 and January 4, 2024. Ex. 4 at 8, 14. At her final session (January 4, 2024), she reported an increase in both soreness and mobility. *Id*. at 9. She thought that PT had helped improve her motion, but also increased her pain. *Id*. Her ROM and pain ratings remained unchanged. *Id*. The therapist noted that she had "progressed well in therapy," with subjective improvement in functional ability, ROM, and strength. *Id*. at 11. Petitioner reported no difficulty with home exercises. *Id*. She was noted to have made minimal progress on her treatment goals, with further sessions recommended. *Id*. at 11-12.

Petitioner saw health care providers in January 2024 for irritability, March 2024 via telemedicine for sinusitis, and May 2024 for foot swelling and insomnia. Ex. 3 at 120, 136, 218; Ex. 5 at 11-14. None of these records mention left shoulder pain.

On August 7, 2024 – seven months after Petitioner's last treatment for her shoulder – Petitioner was seen by telehealth for night sweats and post-vaccination shoulder pain. Ex. 5 at 8. Petitioner reported no improvement from PT, and stated she continued to have pain with certain motions. *Id*. Because it was a telemedicine visit, examination was limited, but noted increased left shoulder pain when Petitioner lifted her arm above her head. *Id*. at 9. Petitioner was advised to use ice and over-the-counter medications, and to follow up with an orthopedist concerning her shoulder pain. *Id*. at 10.

### B. Testimonial and Other Evidence

Petitioner filed a declaration in support of her claim. Ex. 6. She states that her pain began the day after vaccination. *Id*. at ¶ 3. Throughout treatment, she repeatedly felt dismissed by her health care providers, with her PCP attributing her symptoms to age or arthritis. *Id*. at ¶ 4. She states that she continued to complain about shoulder pain during the seven-month gap (January to August 2024), but that her doctor stopped documenting her complaints. *Id*. She specifically recalls mentioning her left shoulder pain at a May 1, 2024 visit when she had injured her foot, although the record of that appointment is silent on her shoulder condition. *Id*.

Petitioner explains that scheduling PT sessions was difficult due to her work schedule. Ex. 6 at ¶ 6. After a few PT sessions, she learned the exercises and began doing them on her own at home. *Id*. She also used a TENS[3] unit, ice, and heat to self-treat her pain. *Id*. Petitioner adds that she switched employers in early 2024, affecting her health insurance and further impacting her ability to seek care. *Id*. at ¶ 5.

## II. Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health

[3] TENS is an abbreviation for transcutaneous electrical nerve stimulation, which involves electrical stimulation of nerves that interferes with transmission of pain signals. *TENS* and *transcutaneous electrical nerve stimulation*, DORLAND'S ONLINE, https://www.dorlandsonline.com/dorland/definition?id=108464 (last visited April 20, 2026).

professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[4] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine Act further includes a "severity requirement," pursuant to which a petitioner demonstrate that they "suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine . . . ." Section 11(c)(1)(D).

"[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) ("a discharge from medical care does not necessarily indicate there are no residual effects"). "A treatment gap . . . does not automatically mean severity cannot be established." *Law v. Sec'y of Health & Human Servs*., No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec'y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen-month gap); *Silvestri v. Sec'y of Health & Human Servs*., No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five-month mark).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time-frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

## III. Finding of Fact Concerning Severity

The record preponderantly supports a finding that Petitioner likely suffered residual effects of her injury for more than six months. Petitioner treated her injury until three months after the onset of her condition. But at her last PT session in early January 2024, Petitioner's ROM and pain ratings had not improved. She reported subjective improvements in ROM – but increased pain. She had made minimal progress on her treatment goals. Thus, this is not a case where a claimant stopped treatment because their condition was reported to have abated.

When Petitioner again sought treatment several months later, in August 2024, she reported that she continued to feel pain with certain motions – suggesting that, by this time, her condition had improved in some respects. But she also exhibited increased pain when lifting her arm above her head – evidence that her condition still had not totally resolved. And she referenced her condition at that time as related to the prior vaccine-associated pain.

Although I find that Petitioner has preponderantly met the statutory severity requirement, Petitioner's injury was clearly mild. and appears to have improved significantly by around the six- to eight-month mark. The treatment gap is also highly relevant to damages, even if it does not defeat severity. As such, I would expect compensation in this case to be low.

**Accordingly:**

- **Respondent shall file, by no later than <u>Friday, May 22, 2026</u>, an amended Rule 4(c) Report or a status report stating how he wishes to proceed.**

- **Petitioner shall file, by no later than <u>Friday, May 22, 2026</u>, a joint status report providing an update on the parties' discussions, including whether and when Petitioner has served a demand.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master